[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 48 
Saia Food Distributors and Club, Inc., d/b/a Klub 280 ("Saia Food"), and Norman Saia, Jr. ("Saia"), a shareholder in Saia Food, appeal from a partial summary judgment in favor of SecurityLink from Ameritech, Inc., and ADT Security Services, Inc., and from an order dismissing their remaining claims based on lack of subject-matter jurisdiction. We affirm in part, reverse in part, and remand.
 Background
In February 2000, Saia Food entered into a contract with SecurityLink pursuant to which SecurityLink was to provide alarm equipment and monitoring services to "Klub 280," a nightclub located in Shelby County and owned and operated by Saia Food. Saia Food agreed to purchase from SecurityLink the necessary monitoring equipment and to pay a monthly fee for the monitoring services. Saia Food purchased equipment totaling $5,800 from SecurityLink.[1]
Although initially functional, shortly after it was installed the system began displaying a "zone-error" message. Saia and *Page 49 
Saia Food alleged that Saia reported the problem to SecurityLink. According to Saia, SecurityLink was unable to locate the problem and instructed Saia to hit the "bypass" button when arming the system in order to avoid the zone-error message. Saia Food and Saia alleged that Saia continued to operate the system using this "bypass" method.
On the night of October 31, 2000, Klub 280 was allegedly burglarized. After the alleged burglary, a fire was set inside the building.[2] However, SecurityLink claimed that it never received a signal from the equipment at Klub 280 on that night indicating either a break-in or a fire. SecurityLink did not notify the proper authorities of the burglary and fire. The damage to the Klub 280 building was extensive. Saia Food and Saia allege that SecurityLink was not monitoring Klub 280 on the night of the fire. Saia Food and Saia obtained records from SecurityLink; they interpreted those records to mean that SecurityLink had not been monitoring Klub 280 since October 21, 2000.
At the time of the fire, Klub 280 was insured with Seneca Insurance Company. Saia Food filed a claim under its insurance policy. When Seneca refused to pay the benefits under the policy, Saia Food sued Seneca; Seneca and Saia Food settled the lawsuit for $920,000.
On January 11, 2002, Saia Food and Saia sued SecurityLink and ADT alleging breach of contract; negligent, wanton, and intentional failure to provide alarm and monitoring services; negligent or wanton failure to hire, train, and supervise their agents; and promissory fraud.[3] ADT answered the complaint, denying that it had entered into a contract with either Saia Food or Saia. ADT asserted that only SecurityLink had contracted with Saia Food and that, on or around July 2001, after the date of SecurityLink's contract with Saia Food, SecurityLink and ADT merged.[4] ADT also asserted the affirmative defenses of contributory negligence, assumption of the risk, unclean hands, estoppel, and, as to the claims asserted by Norman Saia, individually, the failure to state a claim upon which relief could be granted. SecurityLink also answered the complaint, generally denying the allegations, raising contract defenses, and asserting the same affirmative defenses raised by ADT.
In March 2003, ADT and SecurityLink filed a motion for a summary judgment.[5] As a basis for their summary-judgment motion, ADT and SecurityLink relied on a paragraph of the SecurityLink contract, which contained a limitation-of-liability provision and an exculpatory clause. That provision provided:
 "It is understood and agreed by and between the parties hereto that [SecurityLink] *Page 50 
is not an Insurer, nor is this Agreement intended to be an insurance policy or a substitute for an insurance policy. Insurance, if any, will be obtained by [Saia Food]. Charges are based only on the value of the System and/or the services provided and are unrelated to the value of [Saia Food's] property or the property of others located in [Saia Food's] premises. The amounts payable by [Saia Food] are not sufficient to warrant [SecurityLink's] assuming any risk of consequential, collateral, incidental or other damages to [Saia Food] due to the System, its installation, or the use thereof, or any deficiency, defect or inadequacy of the System or services or due to [SecurityLink's] negligence or failure to perform, except as specifically provided for in this agreement. [Saia Food] does not desire this agreement to provide for the liability of [SecurityLink] and [Saia Food] agrees that [SecurityLink] shall not be liable for loss or damage due directly or indirectly to any occurrences or consequences therefrom which the System or service is designed to detect or avert. From the nature of the System provided hereunder, or the services to be performed, it is impractical and extremely difficult to fix the actual damages, if any, which may proximately result from the active or passive negligence of, or a failure on the part of, [SecurityLink] to perform any of its obligations hereunder, or the failure of the System to properly operate. If [SecurityLink] should be found liable for loss or damage due to a failure on the part of [SecurityLink] or the System or services, in any respect, such liability shall be limited solely with regard to any RECURRING SERVICE transaction, to an amount equal to fifty percent of one year's recurring service charge or the amount of $1000.00, whichever is less, or, solely with respect to a DIRECT SALE transaction, to an amount equal to the purchase price of the equipment with respect to which the claim is made, and regardless of the type of transaction, this liability shall be exclusive. The provisions of this paragraph shall apply in the event loss or damage, irrespective of cause or origin, results directly or indirectly to person or property from the performance or nonperformance of the obligations set forth by the terms of this Agreement or from the active or passive negligence of [SecurityLink], its agents or employees. In the event that [Saia Food] desires [SecurityLink] to assume greater liability under this Agreement, a choice is hereby given of obtaining full or limited liability by paying an additional amount in proportion to the amount of liability [SecurityLink] will assume. If this option is chosen, an additional rider shall be attached to this Agreement setting forth the additional liability of [SecurityLink] and the additional charge."
(Capitalization in original.)
On May 20, 2003, the trial court held that the limitation-of-liability clause was valid and enforceable and that it encompassed all of the claims asserted by Saia Food and Saia except for claims asserting intentional, willful, or wanton conduct. Therefore, the trial court held, to the extent ADT and SecurityLink's liability could be established for breach of contract and/or negligence, the maximum damages Saia Food and Saia could recover were capped by the limitation-of-liability clause at $5,800, the purchase price of the equipment. The trial court also held that Saia Food and Saia had failed to establish by substantial evidence any of their claims alleging intentional, willful, and wanton conduct and granted SecurityLink and *Page 51 
ADT's motion for a summary judgment as to those claims.
The trial court concluded by stating that "for the reasons set out herein, summary judgment is granted in favor of defendants and against plaintiffs. Any liability assessed against defendants will be limited to $5,800.00."[6]
Saia Food and Saia appealed. This Court held that the trial court's May 20, 2003, order was interlocutory, because it did not resolve Saia Food and Saia's breach-of-contract and negligence claims. On November 18, 2003, this Court, without an opinion, dismissed the appeal as not being from a final judgment (No. 1021663). Shortly thereafter, pursuant to Rule 68, Ala. R. Civ. P., SecurityLink and ADT served on Saia Food and Saia an offer of judgment on the breach-of-contract and negligence claims in the amount of $5,800, plus the amount of court costs accrued to the date of the offer. After 10 days had elapsed without a response,[7] SecurityLink and ADT filed with the trial court a motion to dismiss Saia Food and Saia's complaint for lack of subject-matter jurisdiction. The trial court held that the claims asserted by Saia Food and Saia were now moot because they had rejected ADT and SecurityLink's offer of judgment, which encompassed all of the relief Saia Food and Saia could have recovered had they prevailed at trial. For this reason, on March 10, 2004, the trial court granted ADT and SecurityLink's motion to dismiss. Saia Food and Saia now appeal.
On appeal, Saia Food and Saia raise the following issues:
 1. Whether the trial court erred in entering a summary judgment for SecurityLink and ADT on Saia Food and Saia's claims of promissory fraud and intentional, willful, and wanton conduct on the basis of the limitation-of-liability clause found in the agreement between Saia Food and SecurityLink.
 2. Whether the trial court erred in entering a summary judgment for SecurityLink and ADT on the additional ground that Saia Food and Saia failed to produce substantial evidence supporting their claims of intentional, willful, and wanton conduct and promissory fraud.
 3. Whether the trial court erred in limiting Saia Food and Saia's recovery to $5,800 and in granting SecurityLink and ADT's motion to dismiss Saia Food and Saia's breach-of-contract and negligence claims for lack of subject-matter jurisdiction.
 Enforceability of the Limitation-of-Liability Provision
We first point out that Saia Food and Saia's breach-of-contract and negligence *Page 52 
claims were not disposed of by the summary judgment. After this Court dismissed Saia Food and Saia's appeal, SecurityLink and ADT immediately served upon Saia Food and Saia an offer of judgment made in conformity with Rule 68, Ala. R. Civ. P. Saia Food and Saia did not respond to that offer of judgment, and SecurityLink and ADT moved to dismiss those claims for lack of subject-matter jurisdiction. The trial court granted their motion and dismissed those claims.
Thus, the breach-of-contract and negligence claims were dismissed by the trial court for lack of subject-matter jurisdiction. We therefore do not address those claims under the standard of review applicable to a summary judgment.
ADT and SecurityLink's motion to dismiss for lack of subject-matter jurisdiction was premised upon the enforceability of the limitation-of-liability provision. SecurityLink argued that Saia Food and Saia could not recover more than $5,800, plus costs accrued to the date of the offer of judgment, and that because they did not accept ADT and SecurityLink's offer of judgment, the trial court lost subject-matter jurisdiction over this controversy. We must determine whether the limitation-of-liability provision is valid in order to determine whether the trial court properly granted ADT and SecurityLink's motion to dismiss. We discuss this limitation-of-liability provision first.
This Court has upheld a similar limitation-of-liability provision. In American District Telegraph Co. of Alabama v.Roberts Son, Inc., 219 Ala. 595, 122 So. 837 (1929), this Court upheld a $50 limitation-of-liability clause found in a sprinkler-service contract. That clause provided:
 "`It is agreed by and between the parties hereto that the Contractor is not an insurer, and that the rates hereinbefore are based solely on the value of the service in the operation of the system described, and in case of failure to perform such service and a resulting loss its liability hereunder shall be limited to and fixed at the sum of $50.00 as liquidated damages, and not as a penalty, and this liability shall be exclusive.'"
219 Ala. at 598, 122 So. at 838. Without much explanation, theAmerican District Telegraph Court found the provision enforceable and modified the trial court's judgment in favor of the plaintiff to award $50, in conformity with the language of the limitation-of-liability provision.[8]
The case of Leon's Bakery, Inc. v. Grinnell Corp.,990 F.2d 44 (2d Cir. 1993), provides additional explanation for upholding a limitation-of-liability provision. In Leon's Bakery, the United States Court of Appeals for the Second Circuit enforced a limitation-of-liability clause found in a contract between a fire-alarm-monitoring service and a bakery. The Second Circuit Court of Appeals stated:
 "From all that the parties have cited to us and from all that our own research has unearthed, it appears that all of the courts that have considered the validity of limitation-of-liability clauses in contracts for the provisions of fire alarm systems have found those clauses to be permissible. See, e.g., Shaer Shoe Corp. v. Granite State Alarm, Inc., 110 N.H. 132, 262 A.2d 285, 286-87 (1970) (applying *Page 53 
New Hampshire law and citing cases from Texas, California, and Alabama); Sommer v. Federal Signal Corp., 79 N.Y.2d 540, 553-54, 583 N.Y.S.2d 957, 962-63, 593 N.E.2d 1365, 1370-71 (1992), and cases cited therein (limitation-of-liability clauses in fire alarm contracts enforceable against claim of ordinary negligence, though not against claim of gross negligence); Abel Holding Co. v. American District Telegraph Co., 138 N.J.Super. 137, 145-54, 350 A.2d 292, 296-302 (Law Div. 1975), aff'd, 147 N.J.Super. 263, 371 A.2d 111 (App.Div. 1977). Apparently, a greater number of courts have been concerned with the enforceability of such clauses in contracts for the installation and servicing of burglar alarm systems, and those courts have similarly upheld clauses limiting liability for the failure of such systems, see, e.g., E.H. Ashley Co. v. Wells Fargo Alarm Services, 907 F.2d 1274, 1278 (1st Cir. 1990) (collecting cases from six states holding that contract clauses limiting liability of burglar alarm services were enforceable); Schrier v. Beltway Alarm Co., 73 Md.App. 281, 287-88, 533 A.2d 1316, 1319 (1987) (collecting cases from 14 jurisdictions so holding); St. Paul Fire Marine Insurance Co. v. Guardian Alarm Co., 115 Mich.App. 278, 320 N.W.2d 244, 247
(1982); Colnaghi U.S.A., Ltd. v. Jewelers Protection Services, Ltd., 81 N.Y.2d 821, 595 N.Y.S.2d 381, 611 N.E.2d 282 (1993); Guthrie v. American Protection Industries, 160 Cal.App.3d 951, 954-55, 206 Cal.Rptr. 834, 836 (1984). See generally
Annotation, Liability of Person Furnishing, Installing, or Servicing Burglar or Fire Alarm System for Burglary or Fire Loss, 37 A.L.R.4th 47, 89-97 (1985). . . .
 "The rationale for upholding an agreement between the purchaser and the manufacturer of an alarm system to limit the liability of the manufacturer is that
 "`[m]ost persons, especially operators of business establishments, carry insurance for loss due to various types of crimes. Presumptively insurance companies who issue such policies base their premiums on their assessment of the value of the property and the vulnerability of the premises. No reasonable person could expect that the provider of an alarm service would, for a fee unrelated to the value of the property, undertake to provide an identical type coverage should the alarm fail to prevent the crime.'
 ". . . Even where the contract is not only for the sale and installation of a burglar alarm system but is also for its maintenance or monitoring, if the fee paid is not sufficiently high to include a premium for theft insurance, a clause limiting the alarm service company's liability in the event the alarm service does not function properly is not unconscionable. See, e.g., E.H. Ashley Co. v. Wells Fargo Alarm Services, 907 F.2d at 1278-79 (not inappropriate for the parties to place on user the onus of `"buy[ing] any desired amount of insurance at appropriate rates"').
 "Though the events against which burglar alarms and fire alarms, respectively, are intended to provide protection differ somewhat, in that burglaries are always criminal interventions whereas fires may be either criminal or accidental, we think the rationale for permitting the provider of a burglar alarm system to limit its liability is equally applicable to the provider of a fire alarm system. The supplier of either type of system is paid for its equipment and services, and the price does not generally include a sum designed to anticipate the possible need to pay the purchaser the value of *Page 54 
the property that the system is designed to protect. The owner or custodian of the property is in a far better position than the alarm system seller to know the property's value and to bargain with an insurance company for appropriate coverage and an appropriate premium, and, as the New York Court of Appeals noted, the alarm seller's `limitations on liability help keep alarm services affordable. . . .'"
990 F.2d at 48-49 (citations omitted). See also D.L. Lee Sons,Inc. v. ADT Sec. Sys., Mid-South, Inc., 916 F.Supp. 1571
(S.D.Ga. 1995) (relying heavily on Leon's Bakery, supra, to enforce a limitation-of-liability provision in an ADT contract similar to the provision contained in the SecurityLink contract).
We agree that an installer of security equipment or a supplier of fire- or security-monitoring services does not become an insurer of the property it is designed to help safeguard. Construing a security-equipment or security-monitoring contract as an insurance policy would render such a contract cost prohibitive. In fact, SecurityLink's contract, which Saia executed on behalf of Saia Food, expressly recognized this: "[T]he Company [SecurityLink] is not an insurer, nor is this Agreement intended to be an insurance policy or a substitute for an insurance policy." SecurityLink's contract limits its damages to, in this case, the costs of the equipment Saia Food purchased from SecurityLink. Finally, the contract specifically offered Saia Food the option of increasing SecurityLink's liability exposure by paying additional charges commensurate with the risk Saia Food wished SecurityLink to assume. ("In the event that [Saia Food] desires [SecurityLink] to assume greater liability under this agreement, a choice is hereby given of obtaining full or limited liability by paying an additional amount in proportion to the amount of liability [SecurityLink] will assume. If this option is chosen, an additional rider shall be attached to this Agreement setting forth the additional liability of [SecurityLink] and the additional charge.") Saia Food did not select this option.
Saia Food and Saia argue that this Court should hold unenforceable the limitation-of-liability provision in Saia Food's contract with SecurityLink. They argue that the facts ofAmerican District Telegraph, supra, are distinguishable from those presented in this case. However, we find nothing in this case that compels us to reach a result different from the result this Court reached in American District Telegraph.
Saia Food and Saia also argue that, if we uphold the limitation-of-liability provision, we are allowing SecurityLink to limit its liability for negligence in the performance of the very duties it assumed under the contract. Saia Food and Saia argue that this is not permitted under the holding of AmericanDistrict Telegraph, 219 Ala. at 599, 122 So. at 840 ("This Court is committed to the doctrine that, where parties enter into a relation carrying a legal duty, while one may limit the scope of his duties, he cannot stipulate for protection against negligence in the performance of the duties he does assume."). We disagree with the interpretation Saia Food and Saia give to AmericanDistrict Telegraph.
SecurityLink specifically agreed that it would provide monitoring services for Klub 280. However, Saia Food's contract with SecurityLink also specifically provided:
 "If [SecurityLink] should be found liable for loss or damage due to a failure on the part of [SecurityLink] or the System or services, in any respect, such liability shall be limited . . . solely with respect to a DIRECT SALE transaction, to an *Page 55 
amount equal to the purchase price of the equipment with respect to which the claim is made, and regardless of the type of transaction, this liability shall be exclusive. The provisions of this paragraph shall apply in the event loss or damage, irrespective of cause or origin, results directly or indirectly to person or property from the performance or nonperformance of the obligations set forth by the terms of this Agreement or from the active or passive negligence of [SecurityLink], its agents or employees."
(Capitalization in original.) We do not interpret this language as allowing SecurityLink to escape all liability for any breach of its contract with Saia Food or for SecurityLink's negligence, if any. SecurityLink and Saia Food merely agreed to limit the amount of damages for which SecurityLink could be held responsible. The parties' agreement to limit SecurityLink's exposure is enforceable.
The trial court did not err in finding that the limitation-of-liability provision of the contract between SecurityLink and Saia Food was enforceable. Because we find that the limitation-of-liability provision is enforceable, we next address whether the trial court properly granted ADT and SecurityLink's motion to dismiss for lack of subject-matter jurisdiction based on Saia Food and Saia's failure to respond to the offer of judgment made by ADT and SecurityLink.
 Offer of Judgment
Relying on cases from other jurisdictions, the trial court dismissed Saia Food and Saia's complaint for lack of subject-matter jurisdiction because Saia Food and Saia did not respond to an offer of judgment made pursuant to, and in conformity with, Rule 68, Ala. R. Civ. P. However, the trial court granted the motion to dismiss for lack of subject-matter jurisdiction before this Court had an opportunity to address the issue whether the limitation-of-liability provision was enforceable.[9] Under the procedural posture of this case, we cannot affirm the trial court's dismissal of Saia Food and Saia's complaint for lack of subject-matter jurisdiction. Saia Food and Saia were entitled to an appeal of the trial court's ruling on the enforceability of the limitation-of-liability provision. At the time the offer of judgment was made, Saia Food and Saia still had questions as to the validity of the trial court's ruling. Had they accepted the offer of judgment unconditionally, this case would have been settled, and their right to appeal would have been moot. However, when they did not accept the offer of judgment, the trial court, on an issue of first impression, ruled that it lost subject-matter jurisdiction of Saia Food and Saia's entire complaint. We disagree.
The better approach would have been for Saia Food and Saia to have accepted the offer of judgment conditioned upon this Court's affirming the trial court's ruling as to the enforceability of the limitation-of-liability provision. That acceptance would have preserved Saia Food and Saia's right to appeal the earlier ruling while protecting Saia Food and Saia's right to reject the offer of judgment had this Court reversed the trial court's ruling on the enforceability of the limitation-of-liability provision.
However, we will not penalize Saia Food and Saia for failing to accept unconditionally *Page 56 
a debatable offer of judgment when Saia Food and Saia had not yet confirmed that the amount of the offer of judgment was the most they could recover from ADT and SecurityLink, particularly when, at the time the offer of judgment was made, no precedent for the resulting dismissal of the complaint existed in this State. We reverse the trial court's March 10, 2004, order, in which it dismissed Saia Food and Saia's complaint for lack of subject-matter jurisdiction based on their failure to respond to ADT and SecurityLink's offer of judgment.
However, Saia Food and Saia have now had an opportunity to appeal the question whether the limitation-of-liability provision was enforceable and valid. This Court agrees with the trial court's ruling and has ruled in favor of ADT and SecurityLink. Any judgment obtained in favor of Saia Food and Saia could not exceed the amount of the offer of judgment made by ADT and SecurityLink. In accordance with Rule 68, Ala. R. Civ. P., ADT and SecurityLink are entitled to recover all costs related to the breach-of-contract and the negligence claims incurred after they made their offer of judgment.
 Intentional Tort Claims Asserted by Saia Food and Saia
Saia Food and Saia also appeal from the trial court's summary judgment in favor of ADT and SecurityLink on Saia Food and Saia's claims alleging willful, wanton, and intentional failure to monitor Klub 280; willful, wanton, and intentional failure to supervise and train their employees; and promissory fraud.
 "We review the trial court's entry of a summary judgment de novo, and our standard of review is well settled.
 "`In reviewing the disposition of a motion for summary judgment, "we utilize the same standard as the trial court in determining whether the evidence before [it] made out a genuine issue of material fact," Bussey v. John Deere Co., 531 So.2d 860, 862
(Ala. 1988), and whether the movant was "entitled to a judgment as a matter of law." Wright v. Wright, 654 So.2d 542 (Ala. 1995); Rule 56(c), Ala. R. Civ. P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). Evidence is "substantial" if it is of "such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." Wright, 654 So.2d at 543 (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871
(Ala. 1989)). Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Wilma Corp. v. Fleming Foods of Alabama, Inc., 613 So.2d 359 (Ala. 1993); Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala. 1990).'
 "Hobson v. American Cast Iron Pipe Co., 690 So.2d 341, 344 (Ala. 1997)."
Hollingsworth v. City of Rainbow City, 826 So.2d 787, 789 (Ala. 2001).
We address the claim of promissory fraud first.
 "`The elements of fraud are (1) a false representation (2) of a material existing fact (3) reasonably relied upon by the plaintiff (4) who suffered damage as a proximate consequence of the misrepresentation. To prevail on a promissory fraud claim such as that at issue here, that is, based upon a promise to act or *Page 57 
not to act in the future, two additional elements must be satisfied: (5) proof that at the time of the misrepresentation, the defendant had the intention not to perform the act promised, and (6) proof that the defendant had an intent to deceive.'"
Waddell Reed, Inc. v. United Investors Life Ins. Co.,875 So.2d 1143, 1160 (Ala. 2003) (quoting Padgett v. Hughes,535 So.2d 140, 142 (Ala. 1988)).
Saia Food and Saia claim that SecurityLink represented to them that it would monitor Klub 280 but that it failed to do so. However, we find nothing in the record to suggest that, at the time the contract was signed, SecurityLink intended not to perform the promised monitoring services. At most, the evidence suggests that SecurityLink negligently failed to monitor Klub 280. Negligently failing to perform services does not rise to the level of promissory fraud.
Saia Food and Saia also claim that SecurityLink represented that it would properly install the fire-alarm system at Klub 280 but that it failed to do so. However, Saia's own testimony established that the system operated properly, at least for a period. We find nothing in the record to suggest that, at the time it entered into the contract, SecurityLink intended not to install the system properly. The evidence in the record suggests at most that ADT and SecurityLink were negligent in repairing or locating the problem in the security system installed at Klub 280. Negligently repairing the system or failing to locate the problem in a system does not rise to the level of promissory fraud. The trial court properly entered a summary judgment for ADT and SecurityLink on the promissory-fraud claim.
We next address Saia Food and Saia's appeal from the summary judgment in favor of ADT and SecurityLink on Saia Food and Saia's claims of willful, wanton, and intentional failure to monitor Klub 280, and willful, wanton, and intentional failure to supervise and train their employees.[10] However, after a review of the record, we find nothing to support the claims that ADT and SecurityLink willfully, wantonly, and intentionally failed to monitor Klub 280, or that they willfully, wantonly, and intentionally failed to supervise and train their employees. The record contains evidence supporting, at most, claims of negligence and breach of contract. We affirm the summary judgment entered in favor of ADT and SecurityLink on the claims asserting a willful, wanton, and intentional failure to monitor, supervise, and train.
 Conclusion
The limitation-of-liability provision contained in the SecurityLink contract is valid *Page 58 
and enforceable as to the breach-of-contract and negligence claims. We affirm the trial court's ruling that the maximum amount of damages recoverable from ADT and SecurityLink for breach of contract and negligence is limited to $5,800. We reverse the trial court's order dismissing Saia Food and Saia's breach-of-contract and negligence claims for lack of subject-matter jurisdiction. We affirm the summary judgment entered in favor of ADT and SecurityLink as to the intentional tort claims asserted by Saia Food and Saia. We also conclude that Saia Food and Saia are liable for all costs incurred by ADT and SecurityLink on the breach-of-contract and negligence claims after the date of their offer of judgment. We remand this cause for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
NABERS, C.J., and SEE, BROWN, and HARWOOD, JJ., concur.
[1] According to Saia, who executed the contract on behalf of Saia Food, this equipment included a control panel, a keypad, an interior and exterior siren, door contacts, motion detectors, smoke detectors, strobe lights, manual-pull stations, and a power supply. Saia later asked SecurityLink to change the smoke detectors to heat detectors.
[2] A subsequent investigation of the fire revealed that, even after the nightclub was allegedly burglarized and the fire was set, all of the doors to Klub 280 remained locked.
[3] In a separate action, Seneca also sued SecurityLink in the Shelby Circuit Court. Seneca alleged that, under the subrogation provision of its policy of insurance with Saia Food, it was entitled to recover all sums SecurityLink paid to Saia Food. In December 2002, Seneca's action was consolidated with Saia Food and Saia's action. Seneca is not involved in this appeal.
[4] ADT asserted that its parent company purchased SecurityLink and merged SecurityLink into ADT Security Services.
[5] ADT continued to assert that it was not a party to the contract between Saia Food and SecurityLink and that it therefore was not liable under that contract. Although it did not argue that issue as a basis for its summary-judgment motion, ADT reserved that issue for trial if the trial court denied its summary-judgment motion.
[6] The trial court also addressed Seneca's claims in its order. The trial court stated "Seneca is bound to the limitation of liability clause to the same extent as is Saia [and Saia Food]. Any claims Seneca derives for intentional, willful or wanton conduct are dismissed for failure of substantial evidence."
[7] Rule 68, Ala. R. Civ. P., provides in part:
 "At any time more than fifteen (15) days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, with costs then accrued. If within ten (10) days after the service of the offer, the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon the clerk shall enter judgment. An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs. If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer."
[8] The Court originally held that the clause was void because the defendant was a quasi-public service corporation and such a corporate entity could not enter into a relationship carrying a legal duty and then stipulate against liability for negligence in the performance of those duties. However, on rehearing, the Court concluded that the defendant was a private corporation and had the right to contract as it pleased. Therefore, the Court held that the contract was not void as contrary to public policy and was enforceable.
[9] The trial court granted the motion to dismiss on the basis that it lacked subject-matter jurisdiction after this Court had remanded the case to the trial court for a determination of liability on Saia Food and Saia's claims of breach of contract and negligence. In its remand order, the Court did not address whether the trial court had properly capped ADT and SecurityLink's exposure to damages on those claims at $5,800.
[10] The limitation-of-liability provision in SecurityLink's contract with Saia Food does not bar Saia Food and Saia's intentional tort claims. Other jurisdictions have construed similar limitation-of-liability clauses as not barring such claims. See D.L. Lee Sons, Inc., 916 F.Supp. at 1583-84:
 "A clause in a contract limiting liability for negligent acts does not serve to limit liability for wilful or wanton conduct. Lenny's Inc. [v. Allied Sign Erectors, Inc.], [170 Ga.App. 706,] 318 S.E.2d [140] at 142 [(1988)] (Allegations of Defendant's wilful and wanton conduct precluded granting of motion for summary judgment); Hawes v. Central of Ga. R. Co., 117 Ga.App. 771, 162 S.E.2d 14 (1968); Corral [v. Rollins Protective Servs., Co.], 240 Kan. 678, 732 P.2d 1260, 1265 (1987) (Limitation of liability clause upheld due to lack of evidence of fraud, mistake, duress or wanton or wilful negligence, and contravention of public policy); Factory Insurance Association v. American District Telegraph Co., 277 So.2d 569, 570
(Fla.[Dist.Ct.App.]1973) (Limitation of liability clause would not preclude claims of gross, wanton and wilful negligence.)."