932 So.2d 95 (2005)
PHARMACIA CORPORATION f/k/a Monsanto Company, et al.
v.
John SUGGS and Linda Suggs.
1040623.
Supreme Court of Alabama.
December 16, 2005.
*96 Matthew J. Lembke and Scott Burnett Smith of Bradley Arant Rose & White, LLP, Birmingham; William J. Baxley and Joel E. Dillard of Baxley, Dillard, Dauphin, McKnight & Barclift, Birmingham; William S. Cox III and Kevin E. Clark of Lightfoot, Franklin & White, LLC, Birmingham; and J. Mark White of White Arnold Andrews & Dowd, PC, Birmingham, for appellants.
D. Frank Davis, John E. Norris, and G. Renée Dall of Davis & Norris, LLP, Birmingham; Josh Wright of Hollis & Wright, P.C., Birmingham; Annesley H. DeGaris of Cory, Watson, Crowder & DeGaris, Birmingham; Robert B. Roden and Jodi K. McKelvin of Shelby & Roden, Birmingham; and Earl P. Underwood, Fairhope, for appellees.
LYONS, Justice.
Pharmacia Corporation f/k/a Monsanto Company, and Craig Branchfield, Michael Forseman, and David Cain, employees of Solutia, Inc. (hereinafter referred to as "the manufacturers"), the defendants below, were granted permission to appeal from the trial court's interlocutory order granting a motion filed by John Suggs and Linda Suggs to amend their complaint to add additional plaintiffs. See Rule 5, Ala. R.App. P. The trial court certified the following controlling question of law:
"Can plaintiffs who settle their claims and accept payment in full satisfaction of those claims subsequently amend their complaint to substitute new plaintiffs?"
We conclude that the Suggses cannot so amend their complaint, and we therefore reverse and remand.

I. Factual Background and Procedural History
This case is one of the toxic-tort cases arising out of the manufacturers' operations in Anniston. See, e.g., Ex parte Monsanto Co., 862 So.2d 595 (Ala.2003). The Suggses filed the instant action in the Calhoun Circuit Court in 2001 against two manufacturers of polychlorinated biphenyls, Pharmacia Corporation f/k/a Monsanto Company, and Solutia, Inc., and three employees of Solutia. Solutia later filed a suggestion of bankruptcy and is not an appellant in this case. Although the case was filed as a putative class action, the Calhoun Circuit Court refused to certify the class.[1] The Calhoun Circuit Court later *97 transferred the case to Jefferson County because of extensive pretrial publicity in Calhoun County. The action was then stayed pending resolution of a related federal action.[2]
On September 9, 2003, the parties to the federal action entered into a settlement agreement, which operated as a "full discharge and satisfaction of all claims that Plaintiffs have or could have had against the parties released under the Settlement Agreement." The Suggses were included within the scope of that agreement. In a letter dated the same day, the manufacturers asked the Suggses to join in a stipulation of dismissal of this state-court case. The Suggses refused to do so, stating that they had yet to receive payment due under the settlement.
In early 2004, however, the Suggses received advanced payments under the settlement, which they unequivocally accepted. In July 2004, the manufacturers again asked the Suggses to join in a stipulation of dismissal, and the Suggses again refused to do so. Instead, the Suggses filed their own motion in the state action, styled as a "Substitution of Class Representatives," moving for joinder of six additional plaintiffs ("the new plaintiffs").[3] The manufacturers moved to strike the motion.
In December 2004, the Jefferson Circuit Court entered an order (1) granting the Suggses' motions to amend the complaint and for substitution of class representatives, thus joining the new plaintiffs; (2) granting leave to add additional plaintiffs until April 1, 2005, without any further leave of the court; (3) reserving judgment on whether class certification was appropriate in light of the allegations asserted in the Suggses' second amended complaint; and (4) dismissing the Suggses, noting that they were subject to the terms of the settlement agreement. The court also certified the previously quoted controlling question of law for permissive appeal under Rule 5.

II. Analysis
Although the Alabama Constitution of 1901 does not have a requirement that a proceeding involve a "case or controversy" as found in Art. III, § 2, of the United States Constitution,[4] we have recognized that settlement renders a judicial proceeding moot and thereby destroys jurisdiction in many cases. See, e.g., Saia Food Distribs. & Club, Inc. v. SecurityLink from Ameritech, Inc., 902 So.2d 46, 55 (Ala. *98 2004) ("Had [the appellants] accepted the offer of judgment unconditionally, this case would have been settled, and their right to appeal would have been moot."); Twin City Fire Ins. Co. v. Colonial Life & Acc. Ins. Co., 839 So.2d 614 (Ala.2002) (settlement of underlying wrongful-termination action renders moot declaratory-judgment action to decide duty-to-indemnify question); and Southern Ry. v. Louisville & N.R. Co., 241 Ala. 691, 4 So.2d 400 (1941) (settlement of claim is conclusive of all elements of claim except those specifically reserved by parties).
Mootness is a time dimension of standing. See In re Allison G., 276 Conn. 146, 156, 883 A.2d 1226, 1231 (2005) ("One commentator has described mootness as `the doctrine of standing set in a time frame: [t]he requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).' H. Monaghan, `Constitutional Adjudication: The Who and When,' 82 Yale L.J. 1363, 1384 (1973)."). See also Presiding Judge Yates's special writing in Auburn Medical Center, Inc. v. Alabama State Health Planning & Development Agency, 848 So.2d 269 (Ala.Civ.App.2002), in which she stated:
"`Justiciability is a compound concept, composed of a number of distinct elements. Chief among these elements is the requirement that a plaintiff have "standing to invoke the power of the court in his behalf."' Ex parte State ex rel. James, 711 So.2d 952, 960 (Ala. 1998), quoting Ex parte Izundu, 568 So.2d 771, 772 (Ala.1990). `Standing requires injury in fact.' Kid's Care, Inc. v. Alabama Dep't of Human Res., 843 So.2d 164, 166 (Ala.2002). "`Standing represents a jurisdictional requirement which remains open to review at all stages of the litigation."' State v. Property at 2018 Rainbow Drive, 740 So.2d 1025, 1028 (Ala.1999), quoting National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 255, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994).
"`Mootness doctrine encompasses the circumstances that destroy the justiciability of a suit previously suitable for determination. It is not enough that the initial requirements of standing and ripeness have been satisfied; the suit must remain alive throughout the course of litigation, to the moment of final appellate disposition.'
"13A Charles A. Wright et al., Federal Practice & Procedure § 3533, at 211 (2d ed.1984) (footnote omitted)."
848 So.2d at 272-73 (Yates, P.J., concurring in the result) (emphasis added).
Deposit Guaranty National Bank v. Roper, 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980), addressed the question of mootness in the settlement context. In Roper, the defendant tendered the amount of the individual claims of each class representative. The class representatives, however, declined the defendant's tender. The United States Supreme Court rejected the defendant's contention that the tender, albeit declined, nonetheless rendered the action moot. Justice Rehnquist noted in his special concurrence that "[t]he distinguishing feature here is that the defendant has made an unaccepted offer of tender in settlement of the individual putative representative's claim." 445 U.S. at 341, 100 S.Ct. 1166 (Rehnquist, J., concurring). The converse of Justice Rehnquist's observation supports the view that mere acceptance of the tender by the class representatives would have rendered the action moot.
In Walding v. Blue Cross & Blue Shield of Alabama, Inc., 577 So.2d 853 (Ala.1991), this Court held that plaintiffs *99 who accepted a settlement and executed a stipulation of dismissal without reservation of any issues for appeal waived their right to appeal the denial of their motion to certify a class. The Court in Blue Cross relied on Shores v. Sklar, 885 F.2d 760 (11th Cir.1989), in which the United States Court of Appeals for the Eleventh Circuit applied the consent-to-judgment waiver doctrine in dismissing Shores's appeal:
"We now hold that appellant's consent to an entry of judgment, given without reservation of a right to appeal, bars a subsequent appeal of the order denying class certification.
"... We find, however, that because he consented to the entry of judgment without reserving his right to appeal any portion thereof, Shores has waived his right to appeal the denial of class certification."
885 F.2d at 762 (footnote omitted). The Walding Court stated:
"We find the facts in Shores to be directly on point and find the rationale expressed in that opinion to be sound.... [T]he Waldings accepted a settlement offer and then entered into a stipulation of dismissal without attempting to reserve any issues for appeal. Their consent to the judgment waived any right they had to appeal the court's denial of their motion to certify a class."
577 So.2d at 855-56. The subsequent entry into a stipulation of dismissal, after the unequivocal acceptance of a settlement, is not an essential precondition of a determination of mootness. Consequently, the Suggses' refusal to execute a stipulation of dismissal after unequivocally accepting the settlement is not a factor that distinguishes this case from Walding.
In Jones v. Southern United Life Insurance Co., 392 So.2d 822 (Ala.1981), this Court allowed a class representative to continue to represent the class after her apparent acceptance of an offer of settlement and after the defendant's tender of payment to her. The defendant argued that its tender of payment to Jones mooted not only her claim, but also the entire action. This Court stated: "Notwithstanding the mootness of the suit as to Mary Jones, it is not moot as to other members of the class, and she can continue to litigate the issues as a representative of the class." 392 So.2d at 823. Chief Justice Torbert dissented, stating that "[Deposit Guaranty National Bank v.] Roper [, 445 U.S. 326 (1980),] is clearly not on point with the case before us in this respect [i.e., the defendant's offer of tender in settlement of the class representative's claim was not accepted in Roper], since here Mary Jones accepted the offer of settlement, yet still sought to represent the putative class." 392 So.2d at 825 (Torbert, C.J., dissenting) (emphasis added). Although we are sympathetic to Chief Justice Torbert's dissent in Jones, in which he points out that the distinguishing feature between Jones and Roper is the acceptance of the tender in Jones and the rejection of the tender in Roper, it is not necessary to overrule Jones because this case is easily distinguishable. In Jones, the class representative sought to remain in the action and to proceed on behalf of the other class members. Here, the named plaintiffs are completely abandoning the action after unequivocally accepting a settlement and then trying to name new class representatives to take their place.
Because the Suggses accepted the settlement that resulted in the entirely appropriate dismissal of their claims in this case, the matters made the basis of the complaint became moot, and the trial court no longer had subject-matter jurisdiction to entertain a motion to amend the moot complaint. Additional plaintiffs who were former members of the putative class have *100 the option of bringing an action against the defendants. Whether such an action is barred by the statute of limitations will depend on the application of the tolling principles announced in First Baptist Church of Citronelle v. Citronelle-Mobile Gathering, Inc., 409 So.2d 727, 729 (Ala. 1981), to the facts of this case.

III. Conclusion
The Suggses' unqualified acceptance of the manufacturers' settlement offer rendered the matters made the basis of the amended complaint moot at that moment and deprived the Jefferson Circuit Court of subject-matter jurisdiction. We therefore reverse the order granting the Suggses' motion to amend the complaint and remand the cause for the trial court to dismiss the case.
REVERSED AND REMANDED.
SEE, WOODALL, STUART, SMITH, BOLIN,[*] and PARKER, JJ., concur.
NABERS, C.J., concurs in the result.
HARWOOD, J., dissents.
HARWOOD, Justice (dissenting).
I respectfully dissent.
In analyzing the holdings and implications of Walding v. Blue Cross & Blue Shield of Alabama, Inc., 577 So.2d 853 (Ala.1991), and the case on which it principally relied, Shores v. Sklar, 885 F.2d 760 (11th Cir.1989), the majority opinion notes that those cases involved the application of "the consent-to-judgment waiver doctrine," but concludes that consent "is not an essential precondition of a determination of mootness." 932 So.2d at 99. For that reason, the main opinion further concludes that "the Suggses' refusal to execute a stipulation of dismissal after unequivocally accepting the settlement is not a factor that distinguishes this case from Walding." 932 So.2d at 99. These propositions are stated without any citation to supporting authority or any explanatory analysis; they are preceded by a discussion of the concept of mootness, but none of the cases cited in that discussion involve putative class actions. In fact, whether those cases provide support for the asserted proposition that "settlement renders a judicial proceeding moot and thereby destroys jurisdiction in many cases," 932 So.2d at 97, is questionable.
In Saia Food Distributors & Club, Inc. v. SecurityLink from Ameritech, Inc., 902 So.2d 46 (Ala.2004), the trial court first entered a partial summary judgment, holding a limitation-of-liability clause valid and enforceable, so as to "cap" potential damages at $5,800. The thus limited plaintiffs, Saia Food Distributors & Club, Inc., and Norman Saia, Jr., sought to appeal that ruling, but this Court dismissed the appeal as being from an interlocutory, nonfinal order. Thereafter, the defendants made an offer of judgment, pursuant to Rule 68, Ala. R. Civ. P., in the amount of $5,800 plus court costs. After the plaintiffs failed to respond within the 10-day period prescribed by Rule 68, the defendants moved the court to dismiss the action for lack of subject-matter jurisdiction. Concluding that the claims had been rendered moot by the plaintiffs' failure to respond to the offer of judgment, the trial court dismissed the action. This Court reasoned, and ruled, as follows:
"[T]he trial court granted the motion to dismiss for lack of subject-matter jurisdiction before this Court had an opportunity to address the issue whether the limitation-of-liability provision was enforceable.9 Under the procedural posture *101 of this case, we cannot affirm the trial court's dismissal of Saia Food and Saia's complaint for lack of subject-matter jurisdiction. Saia Food and Saia were entitled to an appeal of the trial court's ruling on the enforceability of the limitation-of-liability provision. At the time the offer of judgment was made, Saia Food and Saia still had questions as to the validity of the trial court's ruling. Had they accepted the offer of judgment unconditionally, this case would have been settled, and their right to appeal would have been moot....
"The better approach would have been for Saia Food and Saia to have accepted the offer of judgment conditioned upon this Court's affirming the trial court's ruling as to the enforceability of the limitation-of-liability provision. That acceptance would have preserved Saia Food and Saia's right to appeal the earlier ruling while protecting Saia Food and Saia's right to reject the offer of judgment had this Court reversed the trial court's ruling on the enforceability of the limitation-of-liability provision.
"However, we will not penalize Saia Food and Saia for failing to accept unconditionally a debatable offer of judgment when Saia Food and Saia had not yet confirmed that the amount of the offer of judgment was the most they could recover from ADT and Security-Link, particularly when, at the time the offer of judgment was made, no precedent for the resulting dismissal of the complaint existed in this State. We reverse the trial court's March 10, 2004, order, in which it dismissed Saia Food and Saia's complaint for lack of subject-matter jurisdiction based on their failure to respond to ADT and SecurityLink's offer of judgment.
"9 The trial court granted the motion to dismiss on the basis that it lacked subject-matter jurisdiction after this Court had remanded the case to the trial court for a determination of liability on Saia Food and Saia's claims of breach of contract and negligence. In its remand order, the Court did not address whether the trial court had properly capped ADT and SecurityLink's exposure to damages on those claims at $5,800."
902 So.2d at 55-56.
The Court did state in Twin City Fire Insurance Co. v. Colonial Life & Accident Insurance Co., 839 So.2d 614, 615 (Ala. 2002), cited in the main opinion, that "[t]he settlement rendered the declaratory-judgment action moot," but that statement was totally incidental to the issues involved in the case and represented, at best, dictum. Finally, Southern Ry. v. Louisville & N.R. Co., 241 Ala. 691, 4 So.2d 400 (1941), simply does not stand for the proposition attributed to it by the main opinion, to-wit: "settlement of claim is conclusive of all elements of claim except those specifically reversed by parties." 932 So.2d at 98. The "settlement" involved in Southern Ry. was not a part of any underlying lawsuit, but was simply an agreement reached between two parties concerning the application of certain terms of the contract between them to particular fact situations. This Court, in addressing an appeal from a judgment in a lawsuit subsequently entered into between the parties, held only that the parties' prior settlement of the contract disputes that had arisen was binding between the parties with respect to the particular items then involved, but did not preclude disputing liability as to another item. 241 Ala. at 698, 4 So.2d at 405.
In Jones v. Southern United Life Insurance Co., 392 So.2d 822 (Ala.1981), also discussed by the main opinion, Jones filed an action seeking monetary relief for herself and certification of her action as a class action. Before any class-certification *102 determination, the defendant tendered payment to Jones of the monetary amounts she was claiming, and she "accepted the offer of settlement," 392 So.2d at 825 (Chief Justice Torbert, dissenting). Thereafter "the trial court granted [the defendant's] motion for summary judgment on Jones's individual claim and dismissed the remaining portions of the action." 392 So.2d at 823. On appeal, this Court stated: "The issue before this Court is whether Mary Jones, whose claim is rendered moot through satisfaction, prior to certifying the class, may be permitted to have the class certified, and proceed to represent that class, even though she no longer has a real interest in the right to be protected." 392 So.2d at 823. Quoting a case decided by the United States Court of Appeals for the Fifth Circuit, the Court noted that by filing a class action, Jones, as class representative, had assumed responsibilities to the members of the class, which responsibilities she could not terminate by satisfying her individual claim. Thus, Jones's satisfaction of her individual claim did not prevent certification of the class. Further, "[n]otwithstanding the mootness of the suit as to Mary Jones, it is not moot as to other members of the class, and she can continue to litigate the issues as a representative of the class .... [S]he was not ousted as a representative of the class when her individual claim was mooted by payment of her claim ...." 392 So.2d at 823.
Thus, the settlement by a class representative of his or her individual claim does not moot the claims of the class. The main opinion distinguishes Jones on the basis that in that case "the class representative sought to remain in the action and to proceed on behalf of the other class members," noting further that "[h]ere, the named plaintiffs are completely abandoning the action after unequivocally accepting a settlement and then trying to name new class representatives to take their place." 932 So.2d at 99. In point of fact, the Suggses have no more abandoned the action than Mary Jones abandoned hers. Although, like her, the Suggses have accepted a settlement, they did not voluntarily dismiss their right to proceed as class representatives, and, before the entry of any orders of dismissal relating to their claims, they filed a motion to "substitute [certain named individuals] as plaintiff class representatives." When and if new class representatives were in place, any subsequent removal of the Suggses would cause no "break" in the continuity of the proceeding.
The Suggses did not thereafter consent to their dismissal from the action; rather, Pharmacia Corporation and employees of another manufacturer ("the manufacturers") moved the court to strike the purported substitution of class representatives and dismiss the action with prejudice. As noted in the main opinion, what the trial court ultimately did was to allow the complaint to be amended and then, as a last ruling in sequence, to grant the manufacturers' motion to dismiss the Suggses as plaintiffs, so that "they are herein dismissed as parties to this lawsuit." In the process, and in advance of that final ruling, the court noted that, although "class certification in the present matter would be difficult to establish" and was subject to a prior ruling by the judge previously handling the matter in Calhoun County, "[t]he court notes that the Second Amended Complaint reasserts class allegations after [the prior trial judge's] preliminary indication that class certification would be improper. Nonetheless, the Court at this time will reserve judgment as to whether this case should proceed as a class action based upon the class allegations contained in the Second Amended Complaint." The Calhoun Circuit Court entered that prior *103 order only 11 days after the action had been filed, including "class action allegations" and requesting class-action certification, and before any of the defendants had filed an appearance in the case. The order, apparently entered by the judge as a practical expedient on his own motion, read:
"This Court has previously heard arguments on and has rejected class certification of claims such as those made in Plaintiffs' complaint. Simply put, this case is not amenable to class action due to the diversity of damages claimed by various Plaintiffs without more showing on the part of the Plaintiffs, the request for a class certification or a scheduling conference pertaining to such issues is denied."
Pursuant to Rule 23(c)(1), Ala. R. Civ. P., that order was subject to being "altered or amended before the decision on the merits." It would be fully appealable either on an interlocutory basis or upon entry of a final order. Ala.Code 1975, § 6-5-642. Despite the fact that the Suggses filed with their complaint their "motion for scheduling conference regarding class certification issues," such a conference being mandated by § 6-5-641(b), and despite the fact that § 6-5-641(d) requires the court to hold a full evidentiary hearing on class certification on motion of any party, no such conference or hearing preceded the order. Moreover, after that order was entered the Suggses filed in the Calhoun Circuit Court their "First Amended Complaint," adding a claim for "medical monitoring" and adding additional averments to their previously asserted "Class Action Allegations." The manufacturers did not move to strike the amended class-action allegations but did assert in their answer to the first amended complaint that class-action treatment was not appropriate in the case and that "the trial court denied the class certification in this case on May 7, 2001." Thus, the first amended complaint was "on the books" and procedurally viable. Likewise, when the Suggses subsequently filed in the Calhoun Circuit Court their "Second Amended Complaint," reiterating their class-action allegations, no motion to strike was filed. Accordingly, "the class action allegations contained in the Second Amended Complaint" were available for the Jefferson Circuit Court judge to consider when he concluded that based upon the complaint as amended it would be appropriate for him to "reserve judgment as to whether this case should proceed as a class action."
I disagree with the conclusion reached in the main opinion that the circumstance present in both Walding, supra, and Shores, supra, that the settling plaintiff executed a stipulation of dismissal without attempting to reserve any issues for appeal, is a distinction without a difference for the present case. The clearly stated raison d'etre of Shores was that, after class certification had been denied, the plaintiff accepted the defendant's settlement offer and consented to the entry of a judgment awarding the plaintiff a monetary award against the settling defendant and dismissing with prejudice the claims against the three remaining defendants. The Court in Shores explained that the plaintiff's "consent to an entry of judgment, given without reservation of a right to appeal, bars a subsequent appeal of the order denying certification" and that "because he consented to the entry of judgment without reserving his right to appeal any portion thereof, [the plaintiff] has waived his right to appeal the denial of class certification." 885 F.2d at 762. The Court agreed that the plaintiff was "correct that his individual claims and the claims on behalf of putative class are distinct. However, both sets of claims were brought by a single party, i.e. [the plaintiff], and both were part of a *104 single action. [The plaintiff] consented to entry of judgment `in this action' without making any provision for appeal of any of the claims at issue.... The record indicates that [the plaintiff] consented to entry of judgment encompassing the entire action." 885 F.2d at 762-63 (footnote omitted).
Likewise, in Walding, after the plaintiffs' motion for certification of a class action was denied, they settled their claims with the defendant and "the parties filed a stipulation of dismissal with the trial court. [The plaintiffs] did not attempt to reserve any issues for appeal when that stipulation was filed." 577 So.2d at 854. After the trial judge entered a final judgment dismissing the complaint with prejudice, the plaintiffs appealed the denial of the motion to certify a class. Relying on Jones, among other cases, the plaintiffs argued that class representatives should be allowed to appeal the denial of class certification even if their own claims have been extinguished. Distinguishing that case from the situation involved in Jones and other cited cases, this Court stated "[h]owever, unlike the [plaintiffs], the plaintiffs in those cases did not consent to the court's entry of judgment." 577 So.2d at 855. Relying on Shores, supra, this Court concluded that the plaintiffs' "consent to the judgment waived any right they had to appeal the court's denial of their motion to certify a class." 577 So.2d at 856.
In this case the Suggses have not attempted, and need not attempt, an interlocutory appeal of the order of the Calhoun Circuit Court judge denying class certification, because the order of the Jefferson Circuit Court judge effectively altered or amended that earlier order by placing the issue of class certification "back on the table," reserving judgment as to whether the case should proceed as a class action based upon the allegations contained in the complaint as last amended.
I conclude that what the Jefferson Circuit Court judge has done, to the extent that he allowed the complaint to be amended to name new putative class representatives while the class claims asserted by the Suggses were viably available for consideration by virtue of the unstricken amended complaint, does not warrant reversal.
NOTES
[1] The court stated that "this case is not amenable to class action due to the diversity of damage[s] claimed by various Plaintiffs without more showing on the part of the Plaintiffs...." Although the Suggses and the plaintiffs they seek to add to this action by amendment continue to refer to the existence of a class, a class has never been certified in this action.
[2] Tolbert v. Monsanto Co., No. CV-2001-C-1407-S (N.D.Ala.2003).
[3] The Suggses later moved to add a seventh additional plaintiff by a motion for leave to amend the complaint dated October 18, 2004. These additional plaintiffs were purportedly members "of the class on whose behalf this action is brought."

The new plaintiffs include citizens of Delaware, Missouri, New Jersey, and New York. It is not immediately apparent how they would be able to represent a class of Calhoun County residents, but we need not reach that issue.
[4] We have construed Art. VI, § 139, Ala. Const. of 1901 (as amended by amend. no. 328, § 6.01, vesting the judicial power in the Unified Judicial System), to vest this Court "with a limited judicial power that entails the special competence to decide discrete cases and controversies involving particular parties and specific facts." Alabama Power Co. v. Citizens of Alabama, 740 So.2d 371, 381 (Ala. 1999). See also Copeland v. Jefferson County, 284 Ala. 558, 226 So.2d 385 (1969) (courts decide only concrete controversies between adverse parties).
[*] Note from the reporter of decisions: When the opinion in this case was originally released on December 16, 2005, Justice Bolin's vote was inadvertently omitted.